Afternoon is case number 416-0702. People of the State of Illinois v. Eric Reid. And for the appellant, we have Mr. Rosen. And for the affilee, Mr. Zimmerman. Before we get started with arguments, counsel, I want to let you know that Justice Kinect is the third member of this panel. He's unable to be here today. However, he will listen to the oral arguments. As you know, they are recorded. And we will conference with him in resolving these cases. But he won't be joining us today. You may proceed, counsel. May it please the court. Counsel, my name is Zachary Rosen from the 4th District Office of the State Appellate Defender. And I represent Mr. Eric Reid. Now Mr. Reid's case raises a question of science. Science and scientists like to uncover the truth. And that's good for Mr. Reid because for nearly 30 years now, he's argued his innocence. That's why he filed a motion under 116-3. And that's why he asks that his old DNA test be redone using current standards under STR-PCR testing. And he requests that this court grant that because this new testing does have a likelihood of more probative results. And because after the test is conducted, it has the potential to produce new non-cumulative evidence related to his innocence claim. Now I'd like to focus the court's attention to the specific tests and items to be tested. And I'd like to focus on two of them primarily because I think these two areas best meet the requirements of 116-3. And that's one, an STR-PCR test on vaginal swabs and blood samples and a mitochondrial test on collected hairs. These two tests will best meet the standards of 116-3. They will produce probative results because they are the new school of DNA testing and will produce new non-cumulative evidence that can refute, can exonerate, the random match probability of 1 in 17 million that was made part of this case under the RFLP testing. Your Honors, DNA testing has been part of Illinois criminal cases for decades now. But in the 1990s, it was rather new technology. And the technology then was RFLP DNA testing. Now at the time of Mr. Reed's case, experts were allowed to declare a match, share with the court and with the jury a random match probability at just four loci. A loci is just a location where items are tested. They're looking at alleles. Each loci is discriminatory and has a certain ratio at which a match would occur. Then those ratios are multiplied and that's how we get the overall random match probability in this case of 1 in 17 million. Now throughout the 90s, the Illinois State Police Department switched from RFLP testing to STR-PCR testing. And that's because overall, a full battery of STR tests at 13 locations will yield more discriminatory results overall. Now the state points out very adeptly that at each loci, the RFLP is more discriminatory. But overall, the STR-PCR test is more discriminatory because it has the potential of producing a more exacting ratio. And those numbers are important. In 1990, 91 was the trial, Mr. Reed was convicted in part because the DNA evidence showed that it was him with a probability of 1 in 17 million. That statistic is what would yield a random match. And so that evidence was used in part to convict him. But over those years, the testing standards have changed. STR-PCR has the potential to produce ratios in the trillions and in the quadrillions. That's example in people v. Stoker and people v. Williams that I cited. And this court knows from recent cases that DNA testing can even yield results in the sextillion or septillion numbers. Now these numbers are huge. And those probabilities of someone else matching when the numbers are that big are very, very small. 1 in 17 million isn't enough. Judge Leonard, in this case, called that old testing at four locations rather primitive. Let's talk about the expert testimony regarding the differences between these two types of DNA testing. You agreed that there are two different types of testing. Yes, Your Honor. And didn't the expert testify that the new method is not necessarily more reliable or more probative, that there's nothing wrong with the old testing and those results are reliable? Yes, and he is testifying as a scientist. And so what he's talking about are the scientific principles of running that test. And that's where he gets into discussions about how each loci is more discriminatory under RFLP testing. But I guess my question is, when it comes down to it, to sum it up, do you have expert testimony that the trial court had before it that this test is somehow more reliable or that the old testing that was done is not reliable? Not testimony, Your Honor. I think directly related to this case, that information comes in through a letter from Dr. Wright. Was that letter admitted? Your Honor, it wasn't officially admitted. The court said... What's the difference? Well, because the court read it and the court relied on it when it ruled. So the evidentiary hearings span over three years. The information that is submitted, this letter, comes in before the court reaches its determination. There are hearings where Mr. Reed is asking for funding to have Dr. Wright testify. Those requests are denied. And so all he has is this letter. The letter was not admitted. There was no foundation laid. And the expert that authored the letter did not appear and testify. That's correct. But in denying the motion, the judge did say, look, I read the letter and Dr. Wright disagreed with what the state said, but still denied the motion. Now, even if this court refuses to consider the letter, which I argue is a part of the record, I think it can still grant this request. So, counsel, is it appropriate to consider something that was not admitted into evidence? Well, I think that under fundamental fairness, the court below considered it, even if it said it's not part of the record. It was submitted before that court reached a determination, and the court did reference that letter on the day it denied the motion. So if a court says a document was tendered and it was never admitted and made part of the record, your argument is, well, since the judge mentioned it, it now, therefore, becomes part of the record. Well, it is part of the record on appeal. It's there for all of us to look at, but this court need not consider it because it can turn to other Illinois courts and other examples that have talked about these old matches under less than 13 loci as unreliable. The state's own expert said that a full battery of STR-PCR testing would produce more discriminatory results than the RFLP testing conducted in this case. So under STR current standards, the FBI lists 13 core loci as part of CODIS. It's the Combined DNA Indexing System. And again, those loci are just locations that are tested. The four probes or locations that were done in this case in RFLP, none of them are duplicated under STR-PCR. And under modern standards, you need at least 13 matches at those loci before that random match probability can be shared with the court. Now, the People v. Williams case that I cited to say, look, Dr. Reich has testified before in Illinois. He's been admitted as an expert. You can trust him. That case talked about STR-PCR results and said how at 9, 10, and 11 loci, loci where you can get ratios within the trillions, you can still have two random people match that are alive today on Earth, even though there's far less than one trillion people on Earth. So just because the number is big doesn't mean that there is a conclusion. And that's where science is different than the words we use in court to try to convict defendants. So the testing has changed dramatically over the years. In 1990-91, four loci under the old test was enough. But that changed to five loci. That changed to six loci. And I cited two expert testimony that explained that. How an exclusion on a subsequent locus would mean exoneration, would mean that the DNA does not match the defendant. Then the Illinois State Police switched to STR-PCR in the millennia, and they don't run RFLP testing anymore. This testing rarely, if ever, comes into court in modern times because the full 13 loci battery is so much more discriminatory when it is all done. And do you agree that the YSTR testing, according to the expert, is less discriminating than the RFLP testing? For the limited instance that it can identify the entire male population, yes. And that's why I wanted to focus the court's attention today on STR-PCR testing, because overall it is more discriminatory, and mitochondrial testing. And both meet the requirements here. But even STR-PCR went through that same progression that RFLP went through. When that technology was first introduced in the mid-90s, and broadly accepted in the 2000s, nine loci was enough. But slowly, over time, we now require 13 loci because those numbers will reach the one in one trillion, or even higher than that. And so, because of that progression, the new testing has a reasonable likelihood of more probative results. Because it's possible that Mr. Reed is excluded on one of those additional loci. Remember, none of the probes will be duplicated because they're separate locations between the two tests. And because that new testing has the possibility for new non-cumulative evidence. Now, the state has already conceded on the other two points under 116.3 that must be proved that identity was at issue and that a chain of custody was met. So that's why I jumped from Section A down to Section C, talking about those requirements. So, Your Honors, the progress of science is normal. And we rely on science and courts to help us reach the truth. And while one in 17 million seems like a very exacting standard, compared to a ratio in the trillions or higher than that, this Court has recently seen septillion. One in a million is really bad odds in terms of conclusively convicting someone, saying that person is the one who's guilty. And I think that the case, the Savory case, says you have to look at the other evidence. Because in this case, we have the DNA testing, which at the time I think is the most damning piece of evidence, as the state points out. Then we have an identification that wasn't made initially at the line-up. It was made in court. We have a shoe print that matches just the make and model. The expert cannot say that was Mr. Reed's shoe, but that he owned that same make and model shoe, a very popular model. And we have a palm print. And that is on the outside of the car, which I think is important. Now, the reason I go through all of the evidence is because overall, if you start to look at the DNA evidence and distrust the old result as reliable... Based on what? We have an expert who testified that it is reliable. Yes, indeed. Indeed. But he also testified that a full battery under STR-PCR is much more discriminatory. And we know... But he didn't give any testimony to suggest that we should not rely on the initial testing that took place, or any testimony to suggest that new testing is more reliable. So I don't understand. Well, Judge Leonard in this case did call, in initial phases, did call matching at 4 loci rather primitive evidence. Right, but the judge is not the expert. That's correct. That's correct, Your Honor. And the judge ruled that the new testing would not make a difference and would not provide, it would just be cumulative. It would not provide new, non-cumulative evidence. Well, Mr. Reid effectively wasn't allowed to present his own experts because he didn't have the funds. He requested that in motion and it was denied. He then requested that the letter be submitted. That was denied as well. So in a sense, his hands are tied. So the only way I can argue that the science is different and that it has significantly progressed, that the new testing will show more probative, will show new non-cumulative evidence, is by pointing to other examples. And that's why I cited to the People v. Banks and People v. Fountain cases, which I think explicitly show why Mr. Reid could be exonerated under further testing. They highlight an English case where Raymond Easton was matched at 1 in 37 million and he was matched at 6 loci. Now he said he had an alibi and they continued testing. Now remember, he was matched, 1 in 37 million, and that's a very large number. You'd think that was a dead-on match. He was tested at more loci. There was a mismatch at a further loci and the charges were, of course, dropped. And I'm arguing that's what would happen in this case because although the testing was done, new testing exists and there's a likelihood that it presents more probative results. But that's just for STR-PCR. I want to turn the Court's attention also to the request for mitochondrial testing of the hair. The experts testify in this case that the hair in this case was missing a root. And back then, that was a problem. You could not run DNA testing on hair back then in the 90s without a root. But now with the advance of DNA testing, mitochondrial DNA testing, you can test that hair. And again, that test has the possibility of eliminating Mr. Reid as a suspect. And so that falls under A-1 because the hair was never subjected to testing that's now requested. Again, identity and chain is established for the hair. The hair is in the possession of the State. And testing this has the potential to produce new non-cumulative evidence materially related to his innocence, again, because it was never tested. Was that raised at any time during the hearing? Yes, Your Honor, it was. And as the State points out, they say, well, you know, there are these two 116.3 motions. The first one talks about mitochondrial, but the second one does not. But it's clear that the second one did consider mitochondrial testing of the hair because the State argued that the hair shouldn't be tested in relation to that motion. And the Court overruled those objections. This Court can check that in the Supplemental Volume No. 9, Record Cites 7-19. It's referenced again on page 64 of that record. And so when the Court overruled that objection, it was clear the Court was considering a request for mitochondrial testing of the hair, and that it was, in effect, it amended the initial pro se filing. So was there a formal amendment to the initial pro se filing? No, Your Honor, never a formal one. We were back to, well, the Court mentioned it, so my client raised it. Well, the Court mentioned it, the State argued about it, objections were raised and overruled. I think it was very clearly considered. And because the filing... But Justice DeArmond asked you, was it raised? He didn't ask, was it considered or mentioned. He asked you, was it raised? And I think what he means by that, not to correct me if I'm wrong, did the defendant include it in a motion? And did the defendant raise this issue? No, but his filing should be considered with a lenient eye. And that's what the Court did when it was considering his objections and considering that issue. The common theme I'm beginning to hear is that any words that may be spoken somehow open the door to any issues you as appellate counsel decide to raise. There seems to be a rather dangerous road to travel down. Well, that is an issue with mitochondrial testing, but it's not an issue with SDR-PCR. That's clearly raised in the second motion. And you can grant Mr. Reed's request without relying on Dr. Reich's letter at all. Because the evidence is clear from the State's expert, from other experts in other cases that I cited in my brief, from the analysis in People v. Banks and People v. Fountain that say these mistakes can happen. One in 17 million is small potatoes compared to trillions, quadrillions. So, Your Honors, the State raises ratio decada, forfeiture, waiver issues, but they do not apply. Because with one of these claims, the SDR-PCR claim for testing vaginal swabs and blood, that claim should stand. And that claim, of all of them, has the highest chance of providing more probative results, simply because of the progression of DNA evidence over the years. And so is it your position that as testing methods progress and improve, that anyone who is convicted by the use of DNA testing, they should be able to come forward and say, hey, there's a new method now. I'm not saying that the old method was inaccurate or unreliable, but now there's a new method, and I need to have testing based on the new method. No, Your Honor, I don't think that will be a threat. Because this case is particularly well suited under 116.3, because I argue that the other evidence is weak. And because that 1 in 17 million probability is a very high probability that someone else, some other random person, could match. Whereas a new test under SDR-PCR, under the full 13 core loci, would yield a much smaller probability if he's matched at all. There's that chance that he'll be exonerated. And so when you look at people v. Williams, that request there under 116.3 was denied, because the original test was under modern DNA standards and resulted in a random match probability of 1 in 1.1 trillion. Now that number is very big compared to 1 in 17 million. I know both numbers in our minds are quite large, but when you look at the statistical probabilities of another person matching, it's much more likely that that happens in 1 in 17 million, and much, much less likely that that happens in 1 in 1 trillion. So that's why this case is well suited. And that's why granting Mr. Reed's request will not open the Court's doors to frivolous claims, to claims whenever the DNA evidence progresses even just a little bit. Because, and I see I'm out of time, while we measure 13 loci now, the FBI is already conducting 20. Those advancements are happening, but defendants will not be able to abuse those advancements. Thank you, Your Honor. Thank you, Counsel. You'll have additional time on rebuttal if you desire. Mr. Zimmerman. May it please the Court, Counsel. Good afternoon, Your Honors. My name is John Zimmerman from the Fourth District Appellate Prosecutor's Office, here on behalf of the State. Now the State understands a lot of Appellate Counsel's arguments. However, as Your Honors were seemingly notioning, these arguments should have been raised below. And even if they were raised below, the expert clearly stated that the RFLP test, which occurred in this case, was reliable, was accurate, and that's even comparing that to modern-day standards. And as Justice DeArmond was hinting at, it's important to look at issues such as race judicata, the procedural issues that occur at this appellate level, because if you look at the defendant's 2005 116-3 motion, he clearly raises the issue of mitochondrial testing. And the trial court even characterized it as mitochondrial testing and STR-PCR testing. It denied the request. The defendant appealed. It came to this court, which affirmed the trial court's denial and agreed that the testing lacked scientific potential to produce the new non-cumulative evidence materially relevant to the defendant's assertion of actual innocence. And for these reasons, in regards to these mitochondrial testing and STR-PCR testing requests, race judicata should bar a defendant from any more requests regarding those pieces of evidence. Now, the state also contends, as set forth in our second argument, that the defendant's motion was fatally deficient regarding the additional testing of the collected hair. As Justice Holderright was getting at, it was nowhere mentioned within the second, more recent 116-3 motion, and I believe that was likely so because he was aware it was previously denied and affirmed on appeal, therefore race judicata. So for this reason, as the motion was fatally deficient, he should not be allowed now, for that purpose as well as race judicata, to now receive additional testing for the hair. Now, assuming race judicata applies and the motion was fatally deficient regarding the hair, defendant's motion still does raise new requests for additional testing, and these constitute the two unexamined partial palm prints, as well as the Y-STR testing of the Petulo rape kit. And to start, the state does agree with appellate counsel that the defendant properly presented a prima facie case, that identity was the issue, and that there was sufficient chain of custody, so we do not raise issues with that. However, as set forth throughout our brief, the evidence failed to show that additional testing of any of this Y-STR testing of the rape kit or the unexamined prints would materially further his claim of actual innocence. And in fact, as referenced by your honors, the evidence presented at the 116-3 hearing proves the opposite. In regards to the palm prints, the state fails to see how this evidence would ever materially further his claims of actual innocence, as there was a matched print that matched on over 20 different points of comparisons. The expert was extremely descriptive of the different ridges he looked at, all the different methods, how overwhelmingly conclusive this was. I think the expert even testified that he has testified in trial to a matched palm print that had only six ridges or points of comparison, whereas here it was 20. This is overwhelming evidence, clearly. And even if these two unidentified prints were compared to the defendant, they didn't match, they didn't match the victim or her husband, who were they going to compare them to? The expert testified there's no way for these to be put into AIFS for intensive database search, and if there's nowhere else to compare them to, I don't see how this materially furthers his claim for actual innocence. Does it change the fact that his palm print was located there? No, it does not, your honor. So that is the state's other point, as set forth throughout the brief. And just quickly, the YSDR testing, as your honor has also noted, it is not more conclusive than an RFLP test. As stated in Barker, for ID purposes, YSDR testing is limited because all individuals in a paternal line will have the same YSDR DNA profile. As a result, that would not offer new non-cumulative evidence supporting his claim of actual innocence. Now, alternatively, the state argued that assuming race judicata does not apply and the court does look at mitochondrial testing and STPCR testing, the claims, for the same reason YSDR testing would not be more conclusive than the RFLP, the mitochondrial is the same. It's just the opposing maternal line as to the paternal line. Again, the RFLP test is more discriminatory than this. It would not materially further his claim of actual innocence. And in regards to the STPCR testing, which the defendant mainly focuses on, as your honors noted, the testimony at the 116.3 hearing was clear. All these arguments the defendant makes now on appeal should have been brought forth there. The partial match controversy, the statistical reliability, I believe the expert was even questioned regarding some of these issues, and he still nonetheless stated, according to more modern standards, this RFLP test, which is 1 in 17 million, is reliable and accurate. So the state fails to see how that would produce anything except non-cumulative evidence. Now, quickly, the state did set forth in its brief argument five additional arguments that the defendant makes now on appeal, and those are mainly the ones I've been referencing that should have been raised below and were mostly, in fact, not. One notable discovery the state has determined, which it previously set forth in its brief, is that all of the relied-upon authority that defendant states shows where the defendant had allegedly met the standard under 116.3, in every one of those cases there was no conclusive DNA evidence introduced at trial. And this morning I tried to look for a case where there was conclusive DNA evidence introduced at trial, and a subsequent 116.3 additional forensic testing was granted, and I could not find a case myself where that ever occurred. So I think that goes to show that where there is conclusive DNA evidence introduced at trial, especially in a case where there's a matched palm print, a matched shoe print, and victim identification, that that clearly would not materially further his actual innocence claim. In regards to the statistical probability and partial matches, statistical probabilities are still allowed in court today. You know, that's more of an evidentiary issue that is determined at trial. It doesn't hold much credibility at a 116.3 hearing where all the testimony presented below showed that the result was reliable, and the one in 17 million was reliable. Moreover, the danger of partial matches is always going to be present. As set forth in our brief, if there's six loci and one of them doesn't match, it's always going to be not going to match. So as the defendant was getting at the probabilities 1 in 17 million, 1 in 17 quadrillion, obviously the latter is going to be more conclusive, but that does not mean that the former is inconclusive or unreliable. So as a result, this case showed that the RFLP analysis and the statistical probabilities were reliable and accurate, and there was no evidence in the record that was contrary to that for the trial court to ever hold to the contrary. In regards to the defendant's Nike shoes, the state does agree that by themselves they don't hold much weight, but they are clearly not irrelevant in this case. Obviously, as the evidence, independent forensic evidence in this case continued to independently corroborate itself, as Justice Connick recently stated, this was a coalescence of coincidence, which as this evidence continued to compile, clearly showed that the shoe print was not rendered irrelevant and continued to add to the highly probative value of this piece of evidence. So in conclusion, the state would request this court to affirm the trial court's denial of the defendant's Section 116-3 motions as set forth in its brief, and if there's no further questions... I don't see any at this time, counsel. Thank you. The state will rest. Thank you, Your Honors. Any further argument, Mr. Rosen? Yes, briefly, Your Honors. The expert in this case did say that the testing was reliable and accurate, but under today's standards, he could not testify that it was a conclusive identification, and so it's not overwhelming evidence. That ratio, the random match probability of 1 in 17 million, would not come in court today because the test did not meet the minimum required matches at the number of loci.  I cited to an expert, Joanna Wank, in a different case that testified to that fact, that it went from 4 to 5 to 6 under RFLP, and an exclusion at the 5th or 6th locus would mean exoneration, exclusion of that specific suspect. The state argues that statistics are still allowed, but only after the certain number of matches at the certain number of loci are met, and that's changed over the years. The experts have talked about that. That's in this case. The experts have talked about it in other cases. I don't need to rely on Dr. Wright for that format. That's why the FBI has added new loci year after year and have finally said 13 core loci, that's the minimum you need in order to declare a conclusive match. But I don't want to muddy the difference between science and language. A scientist would never say it's a conclusive match. They would only say it's a match and then explain the random match probability, because science and statistics say that someone else could randomly match with that DNA, and I'm afraid that that's what happened to Mr. Reed because the evidence, because the testing was old, because it was primitive, as Judge Leonard identifies. The state expert in this case did acknowledge if a whole battery of STR tests were completed, the weight applied to an STR-PCR will be more positive than RFLP, and the weight applied that that scientist is talking about is the random match probability ratio. Your Honors, Mr. Reed's claims do face waiver, res judicata issues, but waiver and res judicata will be relaxed when fundamental fairness so requires, and I think that this case is well suited for that type of generosity from the appellate court, because the testing is so old, because for nearly 30 years Mr. Reed has claimed his innocence, and because the DNA testing has progressed so significantly that no expert would say four loci under RFLP is a conclusive match. When the expert said that that information is still reliable and accurate, he wasn't saying that he would declare the match today or under modern standards. That's why that minimum loci number has increased regularly throughout the nearly 30 years of DNA technological progress. Your Honor, I highlighted STR-PCR testing of the vaginal swabs and blood samples because I think that is the strongest claim under the statute. I do argue that the other arguments are still valid and should be raised for preservation purposes, but this court I think should focus on STR-PCR because it's properly raised in the motion, and because the evidence, even ignoring Dr. Reich's letter, is there from other experts in this case, experts that have testified in other cases, and the Illinois courts that have recognized the very fault that may have happened with Mr. Reed in the Raymond England case. So, Your Honor, if there are no questions... I don't see any, Counsel. I ask that you grant Mr. Reed's request, that you grant his motion for testing STR-PCR testing specifically on the vaginal swabs and blood samples. Thank you, Your Honor. Thank you, Counsel. We'll take this matter under advisement and be in recess at this time.